UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**WILLIAM GLENN DICKINSON, JR.**     **DOCKET NO. 6:21-cv-1941**
                                                                    **SECTION P**

**VERSUS**                                                   **JUDGE ROBERT R. SUMMERHAYS**

**ACADIA PARISH JAIL, ET AL**          **MAGISTRATE JUDGE WHITEHURST**

### REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgment filed by defendant Jody Thibeaux, Warden of the Acadia Parish Jail. Doc. 52. Plaintiff William Glenn Dickinson, Jr. did not file an opposition to the motion, which is now ripe for review.

**I.     Background**

Plaintiff filed the instant pro se civil rights complaint on June 30, 2021 (rec. doc. 1) and has since filed four amended complaints (rec. docs. 4, 8, 19, 24). On November 17, 2022, all claims related to plaintiff's medical care were dismissed. Rec. Doc. 51.

The claims remaining before this Court are as follows: (1) plaintiff was not provided a proper mattress for several days when first booked into the Acadia Parish Jail (APJ); (2) plaintiff's request to receive religious books from his family was denied; (3) APJ was in violation of La. Admin. Code Title 22, Part III § 3305 because inmates only receive six hours of time outside of their cells per day and because their cells are eight feet by ten feet in size (the "Administrative Code claim"); (4) APJ was in violation of La. Admin. Code Title 22, Part III § 3111(A) because inmates do not receive regular outdoor recreation (the

"outdoor recreation claim"); and (5) plaintiff denied access to his mail because, with the exception of legal mail, he receives a digital copy of his correspondence rather than the original paper copies.

## II. Law and Analysis

### a. Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id*. Ordinarily, summary judgment may not be granted merely because no opposition has been filed. *See Luera v. Kleberg Cnty., Tex.,* 460 Fed. App'x 447, 449 (5th Cir. 2012) (per curiam).

Once the movant makes this showing, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law. *Celotex Corp.,* 477 U.S. at 324. There is no genuine issue of material

fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Furthermore, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir. 1990). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

### b. Mattress Claim

Plaintiff complains that he was booked into the APJ on January 6, 2021, but not given a mattress until January 10-11, 2021, and when he did finally receive a mattress, it was inadequate. Rec. Doc. 24, p. 1.

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). The Eighth Amendment's prohibition on "cruel and unusual punishments" applies to both convicted and pretrial inmates through the Fourteenth Amendment's Due Process Clause and forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted); *Farmer*, 511 U.S. at 832 & 837.

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of

serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In other words, the prison official must have a sufficiently culpable state of mind, one of "deliberate indifference" to inmate health or safety. *Id.* at 834. To find that an official is deliberately indifferent, it must be proven that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

According to the sworn declaration of Warden Thibeaux, under normal circumstances, an inmate arriving at the APJ receives a mattress during intake.[1] The plaintiff, though, arrived at the APJ in the midst of COVID supply shortages. *Id.* During that time period, mattresses for the jail were on a 6-month backorder. *Id.* The jail attempted to source mattresses from other suppliers to no avail. *Id.* When the plaintiff arrived at the jail there were simply no mattresses left to issue to him, so he was assigned a bunk to sleep on that did not have a mattress. *Id.* After four days, a used mattress became available, and it was cleaned and issued to him. *Id.* Its prior assignee had apparently cut approximately ten (10) inches from the length of the mattress. *Id.* Normally, the jail would not have reissued such a mattress, but it was literally the only available mattress. *Id.* As soon as new mattresses arrived the plaintiff was issued one of them. *Id.*

The defendant argues, and the Court agrees, that the above-described situation does not rise to the level of a constitutional violation because the denial of a mattress for a few

---

[1] Rec. Doc. 52-3, Declaration of Warden Jody Thibeaux, attached to the defendant's motion for summary judgment as Exhibit A.

days does not constitute a deprivation of the minimal civilized measures of life's necessities. *Phillips v. East*, 81 F. App'x 483, 485 (5th Cir. 2003). Moreover, "[e]ven prison regulations that infringe a prisoners constitutional rights are upheld if they are reasonably related to a legitimate penological interest." *Id* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Talib v. Gilley*, 138 F.3d 211 (5th Cir.1998)). The unavailability of resources has often been considered a legitimate penological interest. See, e.g., *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007) (collecting cases and noting that unavailability of resources has been held a legitimate penological interest in the context of inmate dietary requests and religious services). Moreover, the Court agrees with the defendant's contention that it cannot be found to have been deliberately indifferent to the plaintiff's need for a mattress, as they gave him the only mattress they had, attempted to source mattresses from other suppliers, and ultimately gave him a new one when it arrived. For all of these reasons, the Court finds that no reasonable trier of fact could find for plaintiff with regard to this claim and summary judgment should be granted. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

  c. **Religious Book Claim**

  Plaintiff's next claim is that he was denied a religious book, specifically an astrology book, in violation of his First Amendment rights. Rec. Doc. 24, p. 1.

  The initial burden to state a free exercise claim is two-fold. *Ali v. Stephens*, 822 F.3d 776, 782–83 (5th Cir. 2016). First, Plaintiff must show that the thing denied him was necessary to exercise a sincerely held religious belief and, second, that the defendant substantially burdened that exercise by, for example, forcing the plaintiff to "engage in

conduct that seriously violates [his] religious beliefs." *Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (internal citations and quotation omitted; modification in the original). The defendant contends, and the undersigned agrees, that plaintiff has made no such showing.

First, according to the sworn declaration of Warden Thibeaux, plaintiff never indicated to what specific religious views he subscribed. During the intake process at the jail, Dickinson denied that he subscribed to any particular religion. *See* Declaration of Jody Thibeaux, rec. doc. 52-3, p. 4. He later requested a book(s) regarding astrology, but did not explain what, if anything, it had to do with his religion.[2] *Id.* He has not provided any information concerning the tenets or practices thereof, nor has he shown what he is required to do to conform to that religion or indicated how the denial of the book prevented him from practicing that religion, or what other avenues for practicing his religion might exist. *Id.* In other words, plaintiff has not explained exactly what sincere religious beliefs it is that he holds, nor how his free exercise rights have been burdened in connection therewith.

Moreover, Warden Thibeaux attested that a book on astrology was subsequently received, without pre-approval, and was denied to him because it was unclear that it had anything to do with his religion. *Id.* It was only then that Mr. Dickinson complained that the book was related to his religion, and despite the fact that he never explained to what religion he actually subscribes, or what astrology had to do with that religion, the warden ultimately approved his receipt of the book, and it was given to him. *Id.*

---

[2] *See also* Rec. Doc. No. 1 at p. 2 where plaintiff alleges that his requests stated (1) "I would like my family to order me a book I want to make sure its ok," and (2) "I'm trying to order a book have my family order it or receive books." Notably, these requests make no mention of religion or even what book he wanted to order. That is clearly insufficient to place the jail notice that the plaintiff was seeking a religious book.

On these facts, the plaintiff has not shown any burden placed upon his free exercise of sincerely held religious beliefs, let alone one that was not justified by legitimate penological interests. For that reason, the Court finds that no reasonable trier of fact could find for plaintiff with regard to this claim and summary judgment should be granted. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

### d. Administrative Code Claim

Plaintiff next complains that "inmates were confined in their cells a maximum of 12 hours in a 24 hour period." Rec. Doc. 4-1, p. 2. In response to plaintiff's complaint, the warden clarified that inmates were allowed out of their twelve feet by eight feet cells for at least two hours three times a day. *Id*. Plaintiff claims that this schedule violates La. Admin. Code Title 22, Part III § 3305. As courts have previously found, whether a defendant "was in compliance with the provisions of the Louisiana Administrative Code is an issue this Court need not and does not reach. To be entitled to relief under § 1983, a plaintiff must be able to show that there was a violation of federal law, and it is clear that a violation of a state administrative code is not, in and of itself, a basis for federal relief." Rec. Doc. 50, p. 4 (citing *Allen v. St. Tammany Par*., 2018 WL 558503, at *3 (E.D. La. Jan. 2, 2018), report and recommendation adopted, 2018 WL 537495 (E.D. La. Jan. 24, 2018) (citing *Tweedy v. Boggs,* 1993 WL 4507, at *1 n.1 (5th Cir. Jan. 5, 1993); *Mathews v. Bowie County, Texas,* 2013 WL 5142381, at *13 (E.D. Tex. Sept. 13, 2013).

To the extent that Plaintiff has or was attempting to allege an Eighth Amendment claim premised on these facts, he has not established the requisite "substantial risk of serious harm" as articulated by the 5th Circuit. *Ruiz v. LeBlanc*, 643 F. App'x 358, 362

(5th Cir. 2016)("[W]hile [the plaintiff] has alleged numerous injuries, he has not alleged sufficient facts to plausibly establish that those injuries constitute a substantial risk of serious harm."). For that reason, the Court finds that no reasonable trier of fact could find for plaintiff with regard to this claim and summary judgment should be granted. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

### e. Outdoor Recreation Claim

Relying again on La. Admin. Code Title 22, Part III, specifically § 3111(A), plaintiff complains that the APJ failed to provide inmates with the required outdoor recreation time. Rec. Doc. 4-1, p. 1. He makes a generalized claim of "pain knee joint, shoulders, back, hips, buttocks" as a result. Rec. Doc. 24, p. 1. In response to his complaint made at the jail, the warden responded, explaining that the jail is situated in a "low lying area that holds water, and it rains a lot here. Rec time outdoors is done when we can. We do have an indoor day room with a larger space than our rec yard that inmates get access to for six hours each day[3]." *Id.* Moreover, the warden clarified in his declaration attached to the motion for summary judgment that the APJ is located in a low-lying area and, although the jail aspires to regular outdoor recreation for its inmates, even a mild rainfall can leave standing water in the area for days. Rec. Doc. 52-4, p. 4. On top of that, between roughly April and September, the area is covered with mosquitos to such an extent that the parish must have

---

[3] For at least six hours a day, the inmates have a "day room" that is roughly half the size of a basketball court, and actually larger than the outdoor recreation area. *Id.* Any complaints about the lack of recreation equipment available in the day room are without merit, as "it is clear that inmates have no protected liberty interest in specific recreational opportunities." *Tyson v. LeBlanc*, No. CIV.A. 10-1174, 2010 WL 5375955, at *16 (E.D. La. Nov. 19, 2010), report and recommendation adopted, No. CIV.A. 10-1174, 2010 WL 5376330 (E.D. La. Dec. 15, 2010), aff'd, 431 F. App'x 371 (5th Cir. 2011)(citing *Lato v. Attorney Gen.*, 773 F.Supp. 973, 978 (W.D.Tex.1991) (citing *Beck v. Lynaugh*, 842 F.2d 757, 762 (5th Cir.1988))).

it sprayed multiple times per week. *Id.* Due to the compounding issues of standing water, mud, and plagues of mosquitos, outdoor recreation time, is admittedly not feasible on a regular basis during large parts of the year.[4] *Id.* When the rec yard is not covered in water or mosquitos, the inmates are provided outdoor recreation time. *Id.*

As stated above, though, the Administrative Code does not entitle a plaintiff to relief under § 1983 absent an accompanying violation of federal law. To the extent that the plaintiff has made or attempted to make a constitutional claim on these same facts, the undersigned finds that this claim is without merit. To succeed on such a conditions of confinement claim, Dickinson would have to show a deprivation that was sufficiently serious and that prison officials acted with deliberate indifference to his health or safety in relation thereto. *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir.2008*); Hewitt v. Henderson*, 271 F. App'x 426, 428 (5th Cir. 2008).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* 563 U.S. 51, 61 (2011) (internal quotation marks omitted). Here, plaintiff cannot show that the defendants were deliberately indifferent to his health or safety because there is no indication of a substantial risk of serious harm. With respect to his allegations of joint pain, the Fifth Circuit has found substantially similar conditions do not pose a substantial risk of serious harm. *Hernandez,* 522 F.3d at 561 (finding the plaintiff's complaints of muscle atrophy, stiffness, loss of range of motion and depression did not

---

[4] The Warden believes that the mosquitos are due to the jail's proximity to rice farms, the fact that the jail is situated on land that also used to be a rice farm, and the near-constant standing water found in the area. *Id.*

pose a "substantial risk of harm" sufficient to constitute an Eighth Amendment violation); also see *Carter v. Tanner*, No. CIV.A. 11-2733, 2014 WL 1329784, at *6 (E.D. La. Mar. 31, 2014). Given the above, the Court finds that no reasonable trier of fact could find for plaintiff with regard to this claim and summary judgment should be granted. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

### f. Mail Claim

Finally, plaintiff complains that the APJ policy that prohibits inmates from possessing postal mail from family and friends violates his 5th Amendment rights. Rec. Doc. 24, pp. 2-3. The APJ policy regarding inmate mail, other than legal mail, which has been in effect since 2019, is that the mail is opened, scanned, and then sent to the inmates on an electronic kiosk in their cell. Rec. Doc. 52-4, p. 3. This policy exists as part of the jail's ongoing efforts to curb the introduction of contraband, specifically drugs. *Id*. The defendant notes that similar policies are being adopted for the same reasons at many jails. *Sawyer v. Charles*, No. CV 21-482, 2022 WL 912215, at *4 (E.D. La. Mar. 29, 2022) (noting that sending inmates their mail digitally via kiosk is "a practice not unusual in a prison setting.").

First, the Court agrees with the defendant's argument that the policy at issue is clearly related to the legitimate penological interest of curbing the introduction of contraband. Moreover, the undersigned has found no Fifth Circuit or Supreme Court case holding this type of policy unconstitutional. Thus, there is no "clearly established law" to place the defendant on notice that the policy might be unconstitutional. *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015) ("The law is clearly established

if there is factually similar, controlling case law from [the Fifth Circuit] or the Supreme Court."). Accordingly, the Court finds that no reasonable trier of fact could find for plaintiff with regard to this claim and summary judgment should be granted. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

### III. Conclusion

For the above-described reasons,

**IT IS RECOMMENDED** that the Motion for Summary Judgment (rec. doc. 52), filed by defendant Jody Thibeaux, be **GRANTED** and all claims against him be dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that all pending motions be **DENIED** as **MOOT**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See, Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 11th day of April, 2023.

_____
**Carol B. Whitehurst**
**United States Magistrate Judge**